# Hummel's Administrator *versus* Hummel's Executor.

1. An agreement was that a father "doth set over, grant, convey and assure" to a son, his heirs and assigns a tract of land, in consideration the son agreed to pay the father $1000 on demand and $500 in two years.    The "heirs of (the father) are each to have a farm and (the son) by paying the $1500 will be entitled to an equal share of all the property that may be left after (the father's) and his wife's decease."    The father to have sole control over a specified part of the land and to be furnished by the son with certain provisions during life.    *Held*, not to be a covenant by the father to give the son an equal share of his estate left at his death, but to regulate its descent, &c., by preventing the conveyance to the son from being treated as an advancement.

2. The $1500 was not the consideration for such covenant, but a condition on which the equality of distribution should depend.

3. The father in his life gave farms to each of the other children, more than their equal shares, and by his will gave all his estate to them, excluding the children of the first son who had died.    *Held*, that an action in the Common Pleas could not be maintained on the contract; it was to be considered and its effect adjusted in the Orphans' Court.

January 26th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Snyder county:* Of January Term 1875, No. 66.

This was an action of covenant, brought April 10th 1873, by Martha Hummel, administrator, &c., of Henry Hummel, deceased, against John Hummel and George P. Mertz, executors of Benjamin Hummel, deceased.

The action was founded on an agreement, dated December 4th 1849, between Benjamin Hummel and Henry Hummel, above named, and executed by both under their seals.

The agreement was as follows:—

"The said Benjamin Hummel, for the consideration hereinafter mentioned, doth set over, grant, convey and assure unto the said Henry Hummel, his heirs and assigns, all that messuage of land joining land of Capt. Jacob Hummel, &c., containing one hundred and thirty-six acres, more or less. In consideration whereof the said Henry Hummel, for himself, his heirs and assigns, doth agree to pay unto Benjamin Hummel fifteen hundred dollars, whereof one thousand dollars is to be paid on demand, and five hundred dollars (without interest) to be paid in two years ensuing the date hereof. The heirs of Benjamin Hummel are each to have a farm, and the said Henry Hummel, by paying the fifteen hundred dollars, will be entitled to an equal share of all the property which may be left after the said Benjamin Hummel and his wife, Catharine Hummel, decease, provided each of the other heirs have a farm as above mentioned. The said Benjamin Hummel is to have the privilege, sole right and control over and in the house he now occupies, the privilege to rent away the house, garden and stable, and to receive all moneys which the renting may amount to, which, after the decease of Benjamin Hummel, when the above-mentioned house will belong to the said Henry Hummel, his heirs and assigns; said Henry Hummel to furnish the said Benjamin Hummel, so long as he remains on the farm, with as much hay and pasture as he may need for his own use; also, twenty bushels of wheat, twenty bushels of corn, ten bushels of oats per year, apples and cider as much as he may wish to use, and the privilege of as much wood as he may want as long as he remains on the farm; also, a potato patch, to plant for himself as many potatoes as he may want."

Henry Hummel died intestate on the 11th of June 1861, having paid the $1500, leaving a widow, Martha Hummel, the plaintiff, and four children.

Benjamin Hummel died January 30th 1869, leaving no widow, but leaving three children,. and the children of his son, the above named Henry Hummel, deceased. Benjamin Hummel left a will, dated June 17th 1868, by which he gave to each of the children of his son, Henry Hummel, $500, he gave $2600 to his son, John Hummel, and $600 to one of his daughters. He directed the residue of his estate to be divided between his three living children.

The declaration set out the agreement, the death of Henry Hummel, the death of Benjamin Hummel and the death of his wife before him. Also, the will of Benjamin Hummel. The declaration averred that Benjamin Hummel, in his lifetime, gave to his son John a farm containing 80 acres, and a piece of land of 8

acres; to his daughter Amelia, a farm containing 110 acres; to his daughter Mary Anne, a farm containing 110 acres; and also that he had conveyed, without consideration, to his son and sons-in-law other land; that the testator died seised and possessed of real estate of the value of $25,000, and personal estate of the value of $15,000.

By an amended declaration the plaintiff averred, that Benjamin Hummel, "after giving to each of his heirs a farm, as indicated in said written agreement," owned real estate to the value of $33,000, and personal estate to the value of $14,000, "which left the heirs, &c., of Henry Hummel, deceased, at the death of Benjamin Hummel and Catharine his wife, a share amounting to $11,750." The declaration averred the performance of Henry Hummel's covenants, and the failure of Benjamin Hummel and his representatives to perform his part of the covenants, &c.

The case was called for trial November 12th 1874, before Bucher, P. J.

The plaintiff offered in evidence the agreement; also, to prove the delivering the possession of the tract mentioned in it to Henry; the retaining by Benjamin of the part reserved, and the compliance by Henry and his representatives with the other stipulations, including the payment of the $1500; the giving farms to the other children as contemplated in the agreement; the conveyance of other pieces of land to them without consideration; the will of Benjamin Hummel; the account of his executors, showing a balance of $12,367 in their hands, and that Benjamin Hummel left real and personal estate of the value of $46,000.

The defendants objected, on the ground that the agreement did not contain such covenant as the plaintiff set up; that if there was such covenant it was with Henry personally and not with his representatives; if the agreement could be construed to be such covenant as the plaintiff alleged, it could be enforced only "in the proper courts of the county in which the estate of the decedent is situate, or which have jurisdiction of the accounts of his representatives, and have power and jurisdiction to make distribution of the testator's estate."

The court rejected the offer, saying :—

" The agreement of December 4th 1849, between Benjamin Hummel, the father, and Henry Hummel, the son, on which the action is based, is ostensibly a sale of a farm of 136 acres, by the father to the son, for a consideration of $1500, at the rate of less than $12 per acre, with a reservation in favor of the grantor to the sole use of a house on the premises, with the right to rent away the house, garden and stable, and receive the rent, and on the death of the father the house is to belong to the son. It is further agreed, that the son is to furnish the father, so long as the latter remains on the farm, with hay and pasture needed, and twenty bushels of

wheat, twenty bushels of corn, ten of oats, apples, cider and wood and potato patch.   Of the money, $1000 to be paid on demand, and $500 in two years, without interest; and then this clause occurs : 'The heirs of Benjamin Hummel are each to have a farm, and the said Henry Hummel, by paying $1500, will be entitled to an equal share of all the property which may be left after said Benjamin Hummel and his wife Catharine Hummel's decease, provided each of the other heirs have a farm as above mentioned.''   It is contended that this amounts to a contract between the father and son; that the latter shall be allowed an equal share in his father's estate upon the decease of the latter ; and this action is brought to recover damages for the breach of the agreement upon two grounds, First, That old Mr. Hummel in his lifetime gave to certain of his children lands to the exclusion of Henry ; and Second, Because the father, by will, left his estate to others, and Henry's heirs (he having died before his father) got nothing, or but little.   It is far from clear that this amounts to a covenant on the part of the father to make his son Henry an equal distributee of the residue of his estate, after each of his heirs had received a farm; but it looks more as if Henry feared that he would be charged with this farm at an advancement, and that he should not be ; the clause was inserted to show that he was a purchaser for full value, and that this arrangement between him and his father was not to be considered on the final distribution of the latter's estate.   But whether this be the true interpretation or not, it seems clear to us that there can be no recovery for the lands the father conveyed in his lifetime to his other children ; for at most Henry was to have an equal share of what was left at the death of his father and mother.   This did not preclude the father from disposing of his property as he chose during life.   But were we to assume that the writing has the force and effect claimed for it, we are of the opinion that in either view its enforcement is exclusively in the Orphans' Court having control of the personal representatives of Benjamin Hummel, the father ; because, if the legal effect of the covenant is to make the sale of 136 acres a matter of bargain and sale, that is the court having jurisdiction of advancements ; and if, in fact, the agreement is a covenant to make Henry a distributee, that is the court having power to distribute, and to permit him to participate as a distributee.   The Court of Common Pleas can do neither, nor can it measure the damages in a common-law action, for it knows not the value of the dead father's estate, nor can a jury settle the estate so as to determine the value thereof.   The Orphans' Court is competent to deal with any question of fact that it encounters in the course of distribution, either by an auditor or an issue, so that there is no difficulty on that score.   It is well settled, that the Orphans' Court

alone has jurisdiction to recover a distributee's share of a decedent's estate."

The court instructed the jury to find for the defendants, which they accordingly did.

The plaintiff took a writ of error and assigned the rejection of their offer of evidence for error.

*G. W. Miller* (with whom was *W. J. Greenough*), for plaintiff in error.—The agreement, so far as relates to the 136 acre farm, was executed and constituted a legal conveyance, without any other formal deed, and the remainder (as to an equal share of the estate) was executory; it is not of a testamentary character, but made for a money consideration, which was paid by Henry to the testator in his lifetime, and the agreement is under seal, importing consideration: Mack's Appeal, 18 P. F. Smith 231; Eckman *v.* Eckman, Id. 470.

*J. B. Packer* and *J. W. Comley* (with whom was *S. Alleman*), for defendants in error.—The covenant if as contended for, did not prevent the testator from giving away his property in his lifetime: Jones *v.* Martin, 3 Anstruther 882; Fortesque *v.* Hennah, 19 Ves. 67; Needham *v.* Kirkman, 3 Barn. & Ald. 531; Laughter's Case, 5 Rep. 216; Jones *v.* How, 9 Mann., Gr. & Scott 1; Barford *v.* Stuckey, 1 Bingh. 225. The purpose of the agreement was to equalize the children after the testator's death; the administrator would not take anything, but the children of Henry would take. The agreement shows that Henry was to take as one of his father's heirs from what might remain at his death, but not an intention to control him during life in disposing of his property: Cochran *v.* Graham, 19 Ves. 63; Jordan *v.* Dutton, 1 Phila. R. 437.

Judgment was entered in the Supreme Court, February 7th 1876,

PER CURIAM.—The clause in the agreement of December 4th 1849, between Benjamin and Henry Hummel, was not a covenant by Benjamin to Henry Hummel to give him an equal share of his estate left at his death, but was intended solely to regulate its descent and distribution by preventing the conveyance of the former to Henry from being treated as an advancement. The payment of the sum of $1500 was not the consideration of such a covenant as is alleged, but was the condition on which equality of distribution was to depend. Henry having paid this sum, as an excess in the valuation of his farm, and the others having received farms for their portions, Henry should not be charged with the value of his farm as an advancement. No action can be maintained therefor in the Common Pleas on this clause as a contract. On the settlement of the estate in the Orphans' Court the agreement would be considered and its effect adjudicated.

Judgment affirmed.